UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CLARENCE T. PARKS,

                            Petitioner,

        v.                                                    9:23-CV-885
                                                              (GTS)
DARYL C. TOWNS, Chairman of the Board of Parole

                            Respondent.

_____

APPEARANCES:                                    OF COUNSEL:

CLARENCE T. PARKS
Petitioner Pro Se
101 Carlisle Street
Syracuse, New York 13208

HON. LETITIA JAMES                              PAUL B. LYONS ESQ.
Attorney for Respondent                         Ass't Attorney General
New York State Attorney General
28 Liberty Street
New York, New York 10005

GLENN T. SUDDABY
United States District Judge

**ORDER**

## I.    INTRODUCTION

Petitioner Clarence Parks seeks federal habeas relief pursuant to 28 U.S.C. § 2254.

Dkt. No. 1, Petition ("Pet.").  Respondent filed an Answer.  Dkt. No. 9, Answer; Dkt. No. 9-1,

Memorandum of Law in Support of Opposition; Dkt. Nos. 9-2, 9-3, 9-5, 17-1 & 17-2, State

Court Records ("SCR"). [1]  Petitioner did not file a Reply.

---

[1]  For the sake of clarity, citations to all parties' filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.  The only exception is the State Court Record ("SCR"), Dkt. Nos. 9-2, 9-3, 9-5, 17-1 & 17-2, where citations will reference the Bates-stamp at the bottom-center of each page, as the exhibit is separately and consecutively paginated.

For the reasons which follow, the Petition is denied.

## II.    RELEVANT BACKGROUND

### A.    Crimes, Charges, and Pretrial Proceedings

"In October 2020, [Petitioner was indicted by] an Onondaga County grand jury . . . [for] second degree strangulation, two counts of second degree criminal contempt, and one count of first degree criminal contempt . . . from events [taking] place on August 15, 2020, April 16, 2020, and August 22 through 23, 2020."  SCR at 73; *see also* SCR at 86-87.  Specifically, on August 15, 2020, Petitioner was charged with using both of his hands to strangle the victim, his girlfriend.  SCR at 86.  Petitioner was remanded without bail.  SCR at 61, 124.  An Order of Protection was also issued, prohibiting Petitioner from having any contact with the victim. SCR at 61,

On August 16, 2020, while detained in the Onondaga County Justice Center, Petitioner wrote two letters to the victim in violation of the Order of Protection.  SCR at 86, 97-101.  In the first letter, Petitioner asked the victim not to "come to court on Friday [because] if [she] show[ed] up they [would] . . . hold [the Petitioner] longer [and] if [she] d[id]n't come they w[ould] let [Petitioner] go."  SCR at 97.  Further, Petitioner said he was "sorry for hurting [the victim]," *id.*, and pleaded with the victim "to drop the[] charges or [Petitioner was] going to jail for a long time because [he has] a record[,]" SCR at 98.  Petitioner repeated these pleas in his second letter, imploring the victim "to drop the charges or [Petitioner will] los[e his] car and truck."  SCR at 100.  Petitioner promised that if the victim did not prosecute the case he would move and no longer bother her, again apologizing and pleading with her not to attend the court proceedings and not to tell law enforcement that he contacted the victim or he would "get new charges."  SCR at 100-01.

Petitioner's preliminary hearing, with counsel Michael Kasmarek, occurred on August 21, 2020, whereupon he was released to a pretrial program to receive mental health and substance abuse treatment.  SCR at 61, 124.  From the evening hours of August 22, 2020, through the early morning hours of August 23, 2020, Petitioner repeatedly called and sent the victim over sixty text messages in direct contravention of the Order of Protection.  SCR at 61, 87.

A bail review hearing occurred on September 3, 2020, where Petitioner appeared with Kasmarek.  SCR at 126.  At that time the court was informed that Petitioner had been in contact with the victim through the two letters and numerous calls and text messages.  SCR at 126.  The court set bail, which Petitioner could not make, so he was detained.  SCR at 127-28.

Petitioner was arraigned on November 4, 2020, with new counsel, attorney Tylyn Bozeman.  SCR at 129-37.  Bozeman attempted to get petitioner released so he could attend a substance abuse and mental health treatment program, SCR at 132-33; however, the Court ultimately decided to maintain petitioner's bail and, consequently, his continued detention, SCR at 135-36.

A second bail review hearing occurred on December 14, 2020, with Bozeman moving for Petitioner's bail to be reduced.  SCR at 138, 140-41.  The People renewed their opposition, citing petitioner's inability to comply with the Order of Protection and his lengthy criminal history, and instead asked that bail be increased.  SCR at 142-43.  Bozeman again indicated that Petitioner had a bed available to him in an inpatient treatment facility for substance abuse.  SCR at 143-44.  While the court declined to modify Petitioner's bail, it did

indicate that it would be willing to revisit the possibility of inpatient treatment if further details were presented to it.  SCR at 145.

On January 6, 2020, Bozeman presented the court with a new plea proposal, incorporating completion of a successful long term inpatient treatment plan as part of the plea.  SCR at 148-151.  The Prosecution opposed the plan and countered with their own plea agreement which included a four-year determinate term of incarceration and three years of post-release supervision.  SCR at 153-55.  The Court rejected both propositions.  SCR at 157-58.

When Petitioner and Bozeman appeared on February 3, 2021, Petitioner (1) requested a *Huntley* hearing and (2) sought new counsel.  SCR at 163-66.  Both requests were ultimately granted, SCR at 165-67, 173; however, the Court did emphasize that "Bozeman has done everything that [Petitioner has] asked in []his case," SCR at 173.

On March 19, 2021, Petitioner attended a proceeding where Patrick Hennessy, Esq. was appointed to serve as Petitioner's third attorney.  SCR at 177-78.

Petitioner's *Huntley* hearing occurred on May 17, 2021.  SCR at 181-205.  Prior to introducing evidence on the pretrial motion, Petitioner indicated that he "would be willing to accept a two-year plea but anything short of that [would result in Petitioner wishing to] . . . proceed forward for trial."  SCR at 182.  The court indicated it would not extend that offer to the Petitioner and confirmed that Petitioner had firmly rejected the Prosecution's offer of a four-year determinate sentence with three years post-release supervision.  SCR at 182-83.

During a court appearance on July 28, 2021, the court discussed the plea-bargaining history in the case.  SCR at 217, 220.  Namely, the People wanted a four-year determinate sentence, Petitioner wanted a two year determinate sentence, and the court announced a

third option, that "if [Petitioner] pleads [guilty] to . . . the indictment, [he] . . . would [be] sentence[d] . . . to three years with three years post[-]release supervision." SCR at 220. Petitioner again sought temporary release, agreeing to the plea if the court would also furlough his custody until sentencing so that he would have the opportunity to renew his commercial driving license. SCR at 221-22. The court denied the request. SCR at 222. Petitioner's attorney asked for more time to discuss the court's proposed disposition. SCR at 224-25.

### B.    Guilty Plea & Sentencing

On July 30, 2021, Petitioner attended a plea hearing with his attorney, Patrick Hennessy. SCR at 227-238. Petitioner indicated that he was ready to proceed with the court's offer, that he enter a plea to all four counts in the indictment for three years custody and three years supervised release. SCR at 228. The court noted that the terms of the plea, and Petitioner's acceptance thereto, were over the People's objection. *Id.*

The court then went over all of the rights that the Petitioner would be waiving by entering a plea of guilty, including, the right to a trial, a unanimous guilty verdict, the prosecution having to call witnesses and produce evidence so that Petitioner would be found guilty beyond a reasonable doubt, confront the prosecution's witnesses and provide evidence and witnesses for Petitioner's own defense, and testify on his own behalf. SCR at 230-31. Petitioner acknowledged he understood that he was giving up all those rights. *Id.* The court emphasized that, by entering a plea of guilty, it was the equivalent to a jury or judge finding Petitioner guilty of the strangulation and criminal contempt charges. SCR at 231. Petitioner again indicated his understanding. *Id.*

The court then asked Petitioner if he was under the influence of any substances or had any mental or physical ailments which would prevent him from thinking clearly.  SCR at 232.  Petitioner denied any such challenges and verbalized his competence to plead guilty.  *Id.*  Petitioner stated that he had no further questions for the Judge or his attorney about his rights, the guilty plea, or its consequences.  SCR at 233.  Petitioner indicated that he was pleading guilty freely and voluntarily because he was in fact guilty.  *Id.*

The court then asked Petitioner about the specifics of each charge in the indictment.  SCR at 233-37.  Petitioner admitted that (1) on August 15, 2020, he intended "to impede the normal breathing or circulation of [the victim] . . . , applied pressure on [her] throat or neck or blocked the nose or mouth of [the victim] . . . and thereby caused. . . loss of consciousness for a period of time[,]"  SCR at 233-34; (2) on August 12, 2020, he, on two separate occasions, willfully disobeyed the court's Order of Protection by sending letters to the victim, SCR at 234-36; and (3) on the evening of August 22nd through the morning hours of August 23rd, he again willfully disobeyed the court's Order of Protection by repeatedly calling the victim and sending her over sixty text messages, SCR at 236-37.  The court concluded that Petitioner entered a knowing, voluntary, and intelligent guilty plea.  SCR at 236-37.  A final Order of Protection was also issued.  SCR at 237.

Petitioner appeared for sentencing with his counsel, Patrick Hennessy, on August 11, 2021.  SCR at 239-255.  The Prosecution again opposed the terms of the plea agreement, specifically the three year sentence for this particular Petitioner, given his past criminal history and inability to comply with the court's Order of Protection during his state court criminal prosecution.  SCR at 248.  The court indicated that it would not change the plea terms or

permit Petitioner to withdraw his plea and sentenced him, as promised, to a three year determinate sentence with three years of post-release supervision.  SCR at 249, 253.

### C.    Challenges to Petitioner's State Custody

#### 1.    First Pro Se State Habeas Petition

In December of 2020, Petitioner filed a pro se state habeas corpus petition challenging his pretrial detention, pursuant to Article 70 of the New York State Civil Practice Law and Rules.  SCR at 1-9.[2]  On February 19, 2021, Petitioner's application was denied and dismissed.  SCR at 10-11.  It does not appear that Petitioner further attempted to appeal the decision.

#### 2.    Second Pro Se State Habeas Petition

In March of 2022, Petitioner filed his second state habeas corpus petition pursuant to Article 70.  SCR at 15-21.[3]  On March 30, 2022, the Onondaga Supreme Court denied Petitioner's application for habeas relief because the action was not the proper procedural vehicle to challenge the validity of Petitioner's conviction as it was already being directly appealed.  SCR at 22.  It does not appear that Petitioner appealed this decision.

#### 3.    Third Pro Se State Habeas Petition

---

[2]  Petitioner argued that his incarceration was unlawful because his indictment was untimely and not supported by legally sufficient evidence.  SCR at 2-3, 5-6.

[3]  Petitioner argued that he was entitled to relief because (1) no medical evidence of strangulation was ever presented during the suppression hearing; (2) the guilty plea was not supported by substantial evidence; (3) there were prejudicial errors in the grand jury minutes; (4) the element regarding the seriousness of the crime was not able to be established because the victim testified that she refused to go to the hospital and there was never a subsequent medical record documenting any symptoms or prescribing any treatment; (5) there were no phone records produced showing that the Petitioner contacted the victim's phone; (6) the judge was biased; and (7) his court appointed counsel was constitutionally ineffective for failing to provide a defense for Petitioner  SCR at 18-19.

In June of 2022, Petitioner filed his third pro se state habeas petition pursuant to Article 70.  SCR at 23-32.[4]  The New York State Appellate Division, Fourth Department, denied the application.  SCR at 33.  It does not appear that Petitioner appealed this decision.

### 4.     Pro Se Motion to Vacate Judgment

Also in June of 2022, Petitioner filed a pro se motion to vacate his judgment pursuant to New York Criminal Procedure Law § 440.10.  SCR at 35-51.[5]

On September 12, 2022, Petitioner's 440 motion was denied without a hearing.  SCR at 72-78.[6]  Petitioner did not appeal the denial of his 440 motion.

### 5.     Direct Appeal from Judgment of Conviction

Petitioner filed a counseled brief, arguing that his three year sentence was harsh and excessive and should be reduced.  SCR at 256-68.  Petitioner provided several supplemental pro se motions for relief as well.  *See* SCR at 268a-e (first brief); SCR at 269-74 (second

---

[4]  Petitioner did not repeat any of his substantive claims from the second petition, and, instead, sought bail and asked for the court to appoint different appellate counsel because his attorney was "not showing up to [Petitioner's] court hearing" and was "not responding to [Petitioner's] pro se motion [or] see[ing] eye to eye."  SCR at 29.

[5]  Petitioner argued that he was entitled to relief because (1) there was no medical evidence presented to support the charge of strangulation and that the victim had suffered an injury, SCR at 42-43, 46-47; (2) there were no phone records to support the allegations that Petitioner had contacted the victim 67 times, SCR at 44, 47; (3) his counsel was constitutionally ineffective for failing to investigate Petitioner's case and prepare a defense, SCR at 35, 47; (4) the grand jury was incorrectly instructed, which resulted in a denial of due process and substantial prejudice, SCR at 44-45; and (5) transcripts from the state court proceedings were wrongfully lost or destroyed, SCR at 45.

[6]  Specifically, the court explained that Petitioner "acknowledge[d that] , he pleaded guilty to each count of the indictment, and d[id] not contend that the plea itself was not voluntary, knowing and intelligent . . . Instead, most of [Petitioner's] claims constitute challenges to the sufficiency of the evidence to support his convictions."  SCR at 74 (internal modifications, quotation marks and citations omitted).  As Petitioner was advised, by pleading guilty, his admissions prevented him from later being able to seek review of claims relating to any alleged deprivation of his rights which preceded the plea.  *Id.*  Consequently, any claims about the sufficiency of the evidence were waived.  SCR at 75. Further, claims about the integrity of the grand jury proceedings needed to be included in Petitioner's direct appeal, not a collateral challenge.  SCR at 75.  Moreover, the claims about his missing transcripts were belied by the record supporting the motion practice.  SCR at 77.  Finally, the court explained that Petitioner's claims about his representation could only be successful if he could show that, but for the advice of counsel, Petitioner would not have plead guilty.  SCR at 75.  Contrary to Petitioner's claims, the court found his representation was meaningful.  SCR at 76.  Specifically, Petitioner's first and second attorneys were able to not only get Petitioner initially released to receive treatment, but they were also able to get him a favorable plea in the face of a potentially receiving a much harsher sentence.  SCR at 76-77.  Petitioner's "vague, conclusory, [and] unsupported [claims led the court to believer] there [wa]s no reasonable possibility that his allegations [we]re true."  SCR at 77.

brief); SCR at 275-82 (third brief).  The New York State Appellate Division, Fourth Department affirmed Petitioner's conviction, and, on April 28, 2023, the New York State Court of Appeals denied Petitioner's application for leave to appeal. *Parks*, 213 A.D.3d at 1208, *lv. appeal denied*, 39 N.Y.3d 1143 (2023).

### 6. Pro Se Writ of *Error Coram Nobis*

In February of 2023, Petitioner filed a pro se petition for a writ of *error coram nobis*.[7] The Fourth Department denied the motion on June 9, 2023.  SCR at 361; *accord People v. Parks*, 217 A.D.3d 1452 (4th Dep't 2023)..

## III. THE PETITION

Petitioner challenges his 2021 judgment of conviction, from Onondaga County Court, upon a guilty plea, for second degree strangulation, first degree criminal contempt, and two counts of second degree criminal contempt. Pet. at 1-2; *accord People v. Parks*, 213 A.D.3d 1208, 1208 (4th Dep't 2023).

Petitioner argues that he is entitled to federal habeas relief because (1) his convictions were not supported by legally sufficient evidence; (2) the trial judge was biased; and (3) his counsel was constitutionally ineffective.  Pet. at 5-7.  Respondent opposed the Petition, arguing that Petitioner's claims failed for various reasons including being not cognizable, unexhausted and defaulted, or meritless.  Dkt. No. 9-1.

## IV. DISCUSSION

### A. Legal Sufficiency

---

[7]  Petitioner argued that he was entitled to relief because (1) the victim was not credible and did not come to court; (2) his first attorney, Michael Kasmerek, had a conflict of interest representing Petitioner because he had previously worked at the District Attorney's office and been the supervisor of the attorney who prosecuted Petitioner's state criminal case; (3) Petitioner's appellate counsel, Susan Norman, would not make the aforementioned conflict of interest motion on Petitioner's behalf and asked Petitioner to withdraw said motion; and (4) the state court erred in affirming Petitioner's judgment because there was no legally sufficient evidence supporting Petitioner's conviction.  SCR at 304-319.

Petitioner first argues that he is entitled to federal habeas relief because his conviction is supported by legally insufficient evidence. Pet. at 5, 7. Specifically, Petitioner states that the "victim refuse[d] to take [an] ambulance to [the] hospital [and] never went to [the] hospital," so there was "no medical record of [the strangulation] injury." *Id.* at 5. Further, there was "no phone record of [Petitioner] calling the victim." *Id.* Accordingly, there is "[n]o proof of the [Petitioner] ever committing th[e crimes of second degree strangulation or first degree contempt.]" *Id.* at 7.  It is unclear whether Petitioner's claims refer to the proceedings before, and the conclusions reached by, the grand jury when it decided to indict him or sometime thereafter.  Regardless, neither claim would be cognizable.[8]

The Supreme Court has long held that "it is clear that a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim." *Jackson v. Virginia*, 443 U.S. 307, 321 (1979) (citing *In re Winship*, 397 U.S. 358, 362 (1970)).  However, when an individual makes the choice to plead guilty to the charges lodged against them, said plea "also serves as a stipulation that no proof by the prosecution need b[e] advanced.  It supplies both evidence and verdict, ending the controversy." *Boykin v. Alabama*, 395 U.S. 238, 242 n.4 (1969) (internal modifications and citations omitted).  In sum, that "plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Id.* at 242.

Consequently, "a petitioner who pleaded guilty in their underlying state proceeding

---

[8]  Respondent also argues that Petitioner's claims are unexhausted and procedurally defaulted.  Dkt. No. 9-1 at 19-20.  Because the Court has found the claims barred by Petitioner's knowing and voluntary guilty plea, it need not consider other alternative theories for denying and dismissing them.

'may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" *Washington v. Bell*, No. 1:20-CV-0718, 2024 WL 2137727, at *4 (S.D.N.Y. May 13, 2024), *report and rec. adopted by*, 2024 WL 2945622 (S.D.N.Y. June 10, 2024) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)); *see also United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings.").

Said another way, "[w]hen a petitioner has pleaded guilty to an offense in state court, the general rule is that the petitioner may only attack the voluntary and intelligent character of a guilty plea." *Washington*, 2024 WL 2137727, at *4 (internal quotation marks and citations omitted); *see also United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (explaining that where a petitioner provides a counseled guilty plea, "the issue is not the merits of [petitioner's] independent claims . . . but rather whether the guilty plea had been made intelligently and voluntarily with the advice of competent counsel.") (internal quotation marks and citations omitted).

Here, Petitioner pleaded guilty yet does not overtly challenge the validity of that plea. However, any such challenge would be denied as meritless.  In evaluating whether a plea was knowing and voluntary, a court may consider, "among other things, [petitioner's] allocution statements." *Carpenter v. Unger*, 9:10-CV-1240 (GTS/TWD); 9:12-CV-0957 (GTS/TWD), 2014 WL 4105398, at *19 (N.D.N.Y. Aug. 20, 2014) (citing *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)).

> [T]he representations of the [petitioner], his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open

> court carry a strong presumption of verity. The subsequent
> presentation of conclusory allegations unsupported by specifics is
> subject to summary dismissal, as are contentions that in the face
> of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. Aug. 19, 2004) ("Where . . . [petitioner] . . . has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on [petitioner's] sworn statements and hold him to them.").

Petitioner's own words belie any subsequent arguments that his plea was unknowing or involuntary. The court went through, in great detail, the myriad of rights that Petitioner would be forfeiting by entering a guilty plea and Petitioner specifically acknowledged those rights and their waiver. SCR at 230-31. The court then confirmed that Petitioner had not taken anything to cloud his judgment or understanding and that he had had adequate time to consult with, and ask questions of, the court and his attorney concerning his trial rights, his guilty plea, and the resulting consequences. SCR at 232-33. Petitioner then engaged with the court, in a colloquy, in which he identified the material facts underlying each criminal count in the indictment prior to pleading guilty to each one in turn. SCR at 233-37. These statements demonstrate not only that Petitioner fully understood the consequences of his plea, but also that he was actually guilty of committing the acts for which he was accused.[9]

---

[9] Petitioner's allocution statements admitting his guilt were consistent with the plain meaning of the documents included in the State Court Record. Specifically, the letters written by Petitioner, while he was detained on August 16, 2020, included unprompted statements from the Petitioner apologizing to the victim for hurting her and asking her not to tell anyone that Petitioner had written to her because Petitioner would face additional criminal charges for doing so. SCR at 97, 100-01. The timing of the letters, being written after the execution of the Order of Protection, was uncontested. The content of the letters lead a reasonable person to conclude that Petitioner had engaged, and continued to engage, in criminal wrongdoing since he was apologizing for causing the victim injury and pain and asking the victim not to tell anyone about the written contact because he knew it was prohibited and would lead to additional criminal charges.

In sum, Petitioner's guilty plea effectively waived all legal sufficiency claims relating to events prior to entry of the plea. *See United States v. Coffin*, 76 F.3d 494, 497-98 (2d Cir. 1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea."); *see also Morris v. Smith*, No. 9:13-CV-1441 (GLS/RFT), 2015 WL 13745077, at *5 (N.D.N.Y. July 29, 2015), *report and recommendation adopted*, 2016 WL 4532160 (N.D.N.Y. Aug. 30, 2016).

Further, any specific challenges about the evidence presented during the grand jury proceeding are also unreviewable because courts in this district have consistently held that a "petitioner's challenge of [a] grand jury proceeding is not cognizable in a habeas corpus proceeding in federal court." *Shepard v. Rich*, No. 9:23-CV-0897 (TJM/MJK), 2024 WL 5358399, at *9 (N.D.N.Y. Sept. 12, 2024) (citing *Davis v. Mantello*, 42 F. App'x 488, 490 (2d Cir. 2002) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court.") (citing cases); *see also Hirsh v. McArdle*, 74 F. Supp. 3d 525, 533 (N.D.N.Y. 2015) (same) (citing cases).  This is because while "[i]n New York, a grand jury indictment arises from the State Constitution and other state laws . . . federal habeas relief may not be granted for violations of state law," and "[t]here is no [separate] federal constitutional right to a grand jury proceeding in a state criminal proceeding." *Shepard*, 2024 WL 5358399, at *9 (citations omitted).  Consequently, Petitioner is not entitled to any habeas relief related to his claims about the legal sufficiency of the evidence during his grand jury proceeding or preceding his guilty plea.

**B.    Judicial Bias**

Petitioner next argues that the state court judge was biased, as demonstrated by his decision to deny Petitioner's motion to suppress.  Pet. at 7.  Petitioner fails to provide any other facts or arguments related to this claim.

As previously explained, "a petitioner who pleaded guilty in their underlying state proceeding 'may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'"  *Washington*, 2024 WL 2137727, at *4; *see also Garcia*, 339 F.3d at 117.  Accordingly, "[w]hen a petitioner has pleaded guilty to an offense in state court, the general rule is that the petitioner may only attack the voluntary and intelligent character of a guilty plea."  *Washington*, 2024 WL 2137727, at *4 (internal quotation marks and citations omitted); *see also Coffin*, 76 F.3d 494 at 497.[10]

Here, for the reasons discussed above, Petitioner's guilty plea is knowing and voluntary.  Therefore, he is barred from attacking any alleged constitutional violations which occurred prior to his plea.  Because the judge allegedly provided biased rulings during the suppression hearing, which took place prior to Petitioner's plea hearing, Petitioner is barred from now raising that independent claim.[11]

## C.    Ineffective Assistance of Counsel

---

[10]  There is an exception to this rule, outlined in *Menna v. New York*, 423 U.S. 61 (1975), which provides that "[w]here a State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." *Id.* at 62.  However, that exception is inapplicable here. *See United States v. Greg*, 463 F.3d 160, 166 (2d Cir. 2006) (explaining that the *Menna* exception is only relevant where the factual guilt for the criminal conviction being challenged was not conclusively established by the petitioner's voluntary guilty plea).

[11]  Respondent also argues that Petitioner's claims are unexhausted and procedurally defaulted.  Dkt. No. 9-1 at 25-27. Because the Court has found the claim barred by Petitioner's knowing and voluntary guilty plea, it need not consider other alternative theories for denying and dismissing them.

Petitioner makes a conclusory statement that his "plea[] agreement was said because [of] ineffective[] assi[s]tance of counsel[.]"  Pet. at 2.  Petitioner fails to provide any other facts or arguments related to this claim.

Given the lack of detail in the pleading and the Court's liberal construction of this claim, it is difficult to determine whether any potential ineffective assistance of counsel claim has been properly exhausted.  However, "potentially complex and difficult issues about [exhaustion and] the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claim[ is] totally without merit."  *Quinney v. Conway*, 784 F. Supp. 2d 247, 260 (W.D.N.Y. 2011 (citing cases).  Therefore, while Respondent has argued that Petitioner's claims are unexhausted and procedurally defaulted, Dkt. No. 9-1 at 22-24, the Court will not further discuss those arguments because, as it will explain, Petitioner's claim is completely meritless.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness; but for counsel's alleged errors, the result of the proceedings would have been different; and, as a result, petitioner suffered prejudice.  *Premo v. Moore*, 562 U.S. 115, 121-22 (2011); *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  The *Strickland* test applies "to challenges to guilty pleas based on ineffective assistance of counsel."  *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).  To establish prejudice in this instance, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Here, Petitioner has failed to meet that standard.  Petitioner has provided no grounds nor cited to any facts that would cast doubt on the knowing, intelligent, and voluntary nature of his plea.  Petitioner puts forth no information about the advice he received, his thought process, or any potential alternatives that he was considering.  "[H]abeas courts [must] consider whether a [petitioner] has provided any new evidence to suggest that he would in fact have acted differently but for his attorney's flawed advice."  *Scott v. Superintendent, Mis-Orange Corr. Fac.*, No. 03-CV-6383, 2006 WL 3095760, at *9 (E.D.N.Y. Oct. 31, 2006).  Petitioner fails to make such a showing, and the record before the Court precludes it from reaching any such conclusion.

In fact, Petitioner has done the converse by "explicitly stat[ing] in his allocution that he fully under[stood] the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney."  *Scott*, 2006 WL 3095760, at *9*; see also Hill v. West*, 599 F. Supp. 2d 371, 392 (W.D.N.Y. 2009) (concluding that petitioner's plea was "knowing and voluntary" and petitioner's "attacks on [his] trial counsel [lacked substance]" where "the record establishe[d] that [petitioner] readily admitted to his culpability," for the criminal conduct and "[t]he trial court made certain to obtain confirmation that [petitioner] had consulted with his attorney . . . and was fully satisfied with counsel's performance[.]"); *Garner v. Lee*, 908 F.3d 845, 867 (2d Cir. 2018) (holding "that solemn declarations in open court carry a strong presumption of verity and that the subsequent presentation of conclusory allegations unsupported by specifics is often subject to summary dismissal.") (original modifications, quotation marks, and citations omitted).  In sum, the "failure to allege that correct advice from [trial] counsel would have altered the [Petitioner's] decision is fatal to [his] ineffective assistance claim to the extent that the claim relates to [Petitioner's] decision to

16

plead guilty." *Smith v. Burge*, No. 1:03-CV-8648, 2005 WL 78583, at *12 (S.D.N.Y. Jan. 12, 2006) (citations omitted).

## V.    CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the Petition, Dkt. No. 1, be **DENIED and DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[12] and it is further

**ORDERED** that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk of the Court respectfully provide Petitioner with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk shall serve a copy of this Order upon the parties in accordance with the Local Rules.

Date:  March 24, 2026
       Syracuse, NY

Glenn T. Suddaby
U.S. District Judge

---

[12]  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).

17